1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY THOMAS MARRUFO,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No.  1:20-cv-01229-SAB<br><br>ORDER DIRECTING CLERK OF THE COURT TO RANDOMLY ASSIGN DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING ACTION TO COMMISSIONER FOR FURTHER PROCEEDINGS<br><br>(ECF Nos. 16, 19, 20)<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

**I.**

**INTRODUCTION**

Plaintiff Anthony Thomas Marrufo ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. For the reasons set forth below, the Court recommends that Plaintiff's Social Security appeal be granted and that the action be remanded to the Commissioner for further proceedings.

1

1

## II.

2

## BACKGROUND[1]

3      Plaintiff initially filed a claim for both disability under Title II and for supplemental

4 security income (SSI) under Title XVI on November 30, 2012.  (See ECF No. 16 at 2.)  Both

5 claims were denied initially and on reconsideration.  Plaintiff attended a hearing before an

6 Administrative Law Judge on September 11, 2014.  His claims were both denied on November

7 18, 2014.

8      On July 16, 2016, Plaintiff filed a new claim for both Title II and Title XVI benefits,

9 alleging a period of disability beginning November 19, 2014.  (Admin. Rec. ("AR") 270–76, 298,

10 ECF No. 9-1.)  On April 26, 2017, Plaintiff was granted SSI benefits beginning July 2016.  (AR

11 175–94.)  However, Plaintiff's claim under Title II was initially denied on August 15, 2017, and

12 denied upon reconsideration on December 15, 2017.  (AR 138–54, 198–201.)  On January 7,

13 2020, Plaintiff appeared before Administrative Law Judge Debra L. Boudreau (the "ALJ"), for an

14 administrative hearing.  (AR 15.)  On January 15, 2020, the ALJ issued a decision finding that

15 Plaintiff was not disabled because he could perform other jobs that existed in significant numbers

16 in the national economy.  (AR 10–27.)  On June 22, 2020, the Appeals Council denied Plaintiff's

17 request for review, making the ALJ's decision the final decision of the Commissioner.  (AR 1–6.)

18      Plaintiff filed this action on August 28, 2020, and seeks judicial review of the denial of his

19 application for disability benefits under Title II.  (ECF No. 1.)  On July 7, 2021, Plaintiff filed an

20 opening brief.  (ECF No. 16.)  On August 31, 2021, Defendant filed a brief in opposition.  (ECF

21 No. 19.)  On September 15, 2021, Plaintiff filed a reply.  (ECF No. 20.)

22

## III.

23

## LEGAL STANDARD

24

### A.      The Disability Standard

25      To qualify for disability insurance benefits under the Social Security Act, the claimant

26 must show that he is unable "to engage in any substantial gainful activity by reason of any

27

28

---

[1] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).   The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.   20 C.F.R. § 404.1520; Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).   The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).   The burden of proof is on the claimant at steps one through four.   Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).   A claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.   20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).   The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."   20 C.F.R. §§

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

3

404.1545(a)(1), 416.945(a)(1).   The RFC must consider all of the claimant's impairments, including those that are not severe.   20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.   See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC).   "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."   Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and work experience.   20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).   To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a vocational expert ("VE").   See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

### B.   Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.   42 U.S.C. § 405(g).   In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.   42 U.S.C. 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).   "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."   Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also

1   Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to

2   the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is

3   not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a

4   scintilla, but less than a preponderance; it is an extremely deferential standard."  Thomas v.

5   CalPortland Co., 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted);

6   see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the

7   Court may not reverse the ALJ's decision where the error is harmless.  Stout, 454 F.3d at 1055–

8   56.  Moreover, the burden of showing that an error is not harmless "normally falls upon the party

9   attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

10        Finally, "a reviewing court must consider the entire record as a whole and may not affirm

11   simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153,

12   1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

13   However, it is not this Court's function to second guess the ALJ's conclusions and substitute the

14   Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational

15   interpretation, it is the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting

16   Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

17                                              **IV.**

18                              **DISCUSSION AND ANALYSIS**

19        While Plaintiff's initial application identifies a host of conditions — e.g., torn fascia, neck

20   injury, kidney failure, carpal tunnel on hands, nerve damage on hands, equilibrium problems,

21   sleep apnea, inguinal hernia, twisted testicle, diabetes, hypertension, and mental health issues —

22   Plaintiff purports the only severe disabling conditions upon which this case turns are the

23   orthopedic conditions, and seeks only to appeal the ALJ ruling with respect to those issues.  (ECF

24   No. 16 at 3–4.)

25        Plaintiff appears to raise the following issues on appeal:[3]  (1) Plaintiff argues the ALJ

26   _____
27   [3] The Court acknowledges the headings in Plaintiff's brief — i.e., "The ALJ committed reversible error in her handling of the opinion testimony," but especially "The ALJ's errors in the analysis of the evidence substantiate the correctness of Dr. Anderson's opinion" — do not clearly identify the aforementioned issues; indeed, Defendant's

28   response appears to only identify the first issue, as to "[w]hether substantial evidence supports the ALJ's evaluation of Dr. Anderson's Functional Capacity Assessment and the State agency medical consultants' prior administrative

1    improperly discounted the opinion testimony of Plaintiff's treating physician, Dr. Bradford

2    Anderson, and his functional capacity assessment while according greater weight to the opinions

3    of the State agency non-examining physicians Drs. P. Frye, Mila Bacalla, and D. Tayloe; and (2)

4    the ALJ improperly discounted Plaintiff's pain testimony.[4]  (ECF No. 16 at 8–15.)  The Court

5    addresses each argument in turn.

6              **A.     Whether the ALJ Properly Evaluated the Medical Opinion Evidence**

7         Plaintiff contends the ALJ failed to provide "clear and convincing" reasons for according

8    "reduced weight" to Dr. Anderson's opinion and functional capacity assessment while according

9    greater weight to the opinions of consulting state physicians Drs. Frye, Bacalla, and Tayloe.

10   (ECF No. 16 at 10–12.)  In opposition, Defendant argues the ALJ's findings comport with 20

11   C.F.R. §§ 404.1527(b) and (c)(2)'s requirement that the ALJ's decision be " 'well-supported by

12   medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

13   other substantial evidence' in the record . . . [and that t]he ALJ . . . give[s] 'good reasons' for the

14   weight given to an opinion from a treating source."  (ECF No. 19 at 5–6.)  As Plaintiff correctly

15   notes (see ECF No. 20 at 2–5), "good reasons" is not the proper legal standard for discounting the

16   opinion of a treating physician.[5]

17        While Defendant cites the proper code section setting forth the standard by which the

18   Commissioner must review medical evidence, Defendant fails to account for the Ninth Circuit's

19   interpretation of this code section, which is well-established law of the Circuit that must be

20   applied to social security claims filed prior to March 27, 2017.  More specifically, when

21   ────────────────────────────────

22   medical findings" (see ECF No. 19 at 4), though the Court notes Defendant also discusses the ALJ's evaluation of
     Plaintiff's symptom testimony with her review of the other medical evidence  (see id. at 7–10).  Nonetheless, despite
23   Plaintiff's unartfully articulated briefing, this Court discerns the following discrete issues are presented in the
     briefings, which are therefore properly before the Court for review.

24   [4] Plaintiff additionally contends, in a single sentence in his introductory remarks that "there remains a question of
     how far prior to [the date of Plaintiff's application] disability should have been established (ECF No. 16 at 1), but the
25   Court does not discern any substantive argument made with respect to this contention and declines to further address
     it herein.  Nonetheless, in light of the Court's recommendation to remand the action, the ALJ should further develop
26   the record to confirm the appropriate date of disability.

27   [5] Defendant's oppositional arguments to this effect, alone, suggest to this Court that the ALJ's decision is based on an
     improper legal standard, and is therefore reversible.  However, the Court reviews the ALJ's decision directly to
28   determine whether the ALJ proffered sufficient reasons for her decisions pursuant to the clear and convincing and
     specific and legitimate standard.

evaluating applications filed before March 27, 2017, the ALJ must explain the weight she gives to all medical source opinions.  See 20 C.F.R. § 404.1527(c).  There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)."  Holohan v. Massanari, 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted).  Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion.  Id.; see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) ("A treating physician's opinion is entitled to "substantial weight.").  However, a non-examining opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  See Thomas, 278 F.3d at 957; Orn v. Astrue, 495 F.3d 625, 632–33 (9th Cir. 2007).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).  Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  Id. (citing Lester v. Chater, 81 F.3d 821, 830–31 (9th Cir. 1995)).  Similarly, where a treating or examining doctor's opinion is contradicted by medical evidence, the ALJ may reject it by providing specific and legitimate reasons supported by substantial evidence in the record.  See Andrews, 53 F.3d at 1041.  However, in doing so, the ALJ must also "consider factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion."  Treviso v. Berryhill, 871 F.3d 664, 676 (9th Cir. 2017) (ALJ's failure to consider treating physician factors under 20 C.F.R. §§ 404.1527(c)(2)–(6) "alone constitutes reversible legal error." (emphasis added)).  The ALJ can satisfy the "specific and legitimate" burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings.  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing Magallanes v. Bowen, 881

1    F.2d 747, 751 (9th Cir. 1989)).  Finally, "the ALJ need not accept the opinion of any physician,

2    including a treating physician, if that opinion is brief, conclusory and inadequately supported by

3    clinical findings."  Bray, 554 F.3d at 1228 (quotation and citation omitted).

4         Here, Dr. Anderson was a treating physician and Drs. Frye, Bacalla, and Tayloe were non-

5    examining state physicians.  Accordingly, Dr. Anderson's opinion was entitled to much greater

6    weight than the opinions of Drs. Frye, Bacalla, and Tayloe.  Holohan, 246 F.3d at 1201–02.  The

7    ALJ discounted Dr. Anderson's opinion due to purported conflicts with the medical evidence.

8    Accordingly, the ALJ was required to provide "specific and legitimate reasons that are supported

9    by substantial evidence."  Bayliss, 427 F.3d at 1216; Lester, 81 F.3d at 830–31; Andrews, 53 F.3d

10   at 1041.

11        1.    The ALJ's Decision

12        The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520,

13   416.920.  (AR 16–26.)  At step one, the ALJ found the claimant had not engaged in substantial

14   gainful activity from the period from his alleged onset date, November 19, 2014, through his date

15   last insured of December 31, 2015.[6]  (AR 18.)  At step two, the ALJ found the claimant had the

16   severe impairments of degenerative disc disease of the lumbar spine, mild degenerative joint

17   disease of the left shoulder, and a hernia, which significantly limit the ability to perform basic

18   work activities.  (AR 18 (citing 20 C.F.R. § 416.1520(c)).)  The ALJ additionally found Plaintiff

19   had a history of acid reflux, hypertension, diabetes mellitus, and a twisted testicle, but determined

20   these were nonsevere impairments.  And the ALJ found Plaintiff had a medically determinable

21   mental impairment of a mood disorder, but that this impairment did not cause more than minimal

22   limitation in Plaintiff's ability to perform basic mental work activities and was therefore

23   nonsevere.  (AR 18–19.)  In supporting her determination regarding Plaintiff's nonsevere

24   impairments, the ALJ gave great weight overall to the opinions of Drs. Tomas Stern and Larry

25   Kravitz, even though these doctors provided their opinions for purposes of a Title XVI claim that

26   _____

27   [6] It is unclear why the ALJ, who issued her decision on January 15, 2020, qualified her finding thusly at step one; the Court did not discern any further discussion on this matter.  It is equally unclear to the Court whether the ALJ considered medical evidence pertaining to Plaintiff's condition as it existed beyond this timeline, to the extent such

28   medical evidence remains relevant to Plaintiff's impairments during the relevant period.

began after the time period relevant to the instant claim.  (AR 19.)  As to these opinions, the ALJ concluded "the undersigned gives the opinions of Dr. Stern and Dr. Kravitz great weight overall because the evidence shows the claimant's mental impairments were nonsevere."[7]  (AR 19.)

At step three, the ALJ found Plaintiff did not, through the date last insured (December 31, 2015), have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. §§ 416.1520(d), 416.1525, and 416.1526.  (AR 20.)

Before proceeding to step four, the ALJ determined Plaintiff's RFC, through the date last insured, permitted him to perform light work as defined in 20 CFR § 404.1567(b), except Plaintiff was able to occasionally lift and/or carry about twenty pounds, and could frequently lift and/or carry about ten pounds.  He could stand and/or walk for about six hours out of an eight-hour workday, and he could sit for about six hours out of an eight-hour workday.  He should never work on ladders, ropes, or scaffolds.  He could occasionally climb stairs and ramps, and he would be able to occasionally balance, stoop, kneel, crouch, and crawl.  He would have been able to occasionally reach overhead with the bilateral upper extremities.  He should not operate hazardous equipment, including saws and presses, and he should not work at unprotected heights.  (AR 20.)

At step four, the ALJ found Plaintiff could not, through the date last insured, perform any past relevant work.  (AR 25.)  At step five, the ALJ determined Plaintiff could perform jobs existing in significant numbers in the national economy, specifically the jobs of cashier II, housekeeper cleaner, and food service worker.  (AR 25–26.)  Therefore, the ALJ found Plaintiff was not under a disability at any time from November 19, 2014, through December 31, 2015.  (AR 26.)

In reaching this decision, the ALJ assigned "some weight" to the January 19, 2017, and November 29, 2016 opinions of Dr. Bacalla and Dr. Frye, respectively, and "partial weight" to

---

[7] It is unclear to this Court why the ALJ dedicated so much of her opinion to an analysis of Plaintiff's purported mental health condition.  Plaintiff's disability application indicates he is claiming disability based on physical conditions.  (AR 84.)  Indeed, Plaintiff raises this point in his briefing, arguing the ALJ's overall assessment was flawed because it relied in part on the determination that Plaintiff's mental health condition did not cause more than minimal limitation.

Dr. Tayloe's December 2017 opinion, all of which concluded that Plaintiff could perform light work.  (AR 23 (referencing generally Exs. B2A, AR 76–98; B3A, AR 99–122; and B7A, AR 138–53).)  More specifically, the ALJ noted Dr. Tayloe opined that Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds, and should avoid even moderate exposure to hazards.  (AR 23 (generally referencing AR 138–53).)  The ALJ only accorded partial weight to these opinions because the doctors wrote them for the purpose of a separate Title XVI claim, with a different relevant period, and did not reference much evidence from the relevant time period in this case to support their opinions.  Nonetheless, the ALJ stated she accorded some weight to the opinions to the extent they referenced and appeared consistent with medical evidence from 2015, specifically, the evidence of Plaintiff's normal straight leg raise tests, range of motion in his lumbar spine, and his normal gait with an inability to do heel or toe walk.   (AR 23 (citing AR 409–25, 905–12 (pain management progress records by Ashok Parmar, M.D.)).)  However, the ALJ declined to accord full weight to these opinions because they did not sufficiently address the degenerative changes to Plaintiff's shoulder, which further limited his ability to reach with his bilateral upper extremities.  (AR 23 (citing AR 448, 526).)

The ALJ gave "little weight" to Dr. Anderson's July 2015 functional capacity assessment.  (AR 23–24 (citing AR 464–66).)  The ALJ noted Dr. Anderson assessed limitations for Plaintiff including lifting up to fifteen pounds maximum, five pounds frequently, and ten pounds occasionally; that Plaintiff could stand and/or walk for less than two hours and he could sit for less than four hours in an eight-hour day.  It appears that the ALJ discounted Dr. Anderson's opinion based on a comment in the treatment notes that Plaintiff "would be seen by physical therapy for a complete functional capacity assessment."  Due to this comment, the ALJ states "[i]t is unclear what [the] functional limitations [identified by Dr. Anderson] are based upon, and if they are the functional limitations provided by physical therapy, or if they are based upon an examination conducted by Dr. Anderson."  (AR 24.)  The ALJ further explained she gave little weight to Dr. Anderson's opinion because it was inconsistent with Plaintiff's report "that he received adequate relief from his medications, it was not debilitating, and he was able to carry out

1   his activities of daily living" ("ADLs").  (AR 24 (citing AR 411, 414).)

2       2.   Analysis

3       As noted above, the ALJ provided two reasons for discounting Dr. Anderson's opinion.

4   As to the first reason, Plaintiff argues a review of Dr. Anderson's report reveals that he did, in

5   fact, perform the assessment of Plaintiff and that the ALJ's comments mischaracterize the record

6   and take certain statements out of context.  Therefore, this reason for discounting Dr. Anderson's

7   report and opinion is not supported by substantial evidence.  The Court agrees.  (See AR 464–66.)

8   It appears the ALJ noted a prior comment by Dr. Anderson notating that Plaintiff "will be seen by

9   physical therapy for complete functional capacity evaluation" at page 4 of 7 of the report, and

10  then perhaps failed to read the remaining pages, in which the Dr. Anderson provides a functional

11  capacity assessment and signs off on the encounter (see AR 467 ("Encounter performed by

12  Bradford Anderson, MD . . .")).  Furthermore, while the functional capacity assessment itself is

13  presented in a check-the-box format, the preceding three pages of Dr. Anderson's encounter notes

14  document his treatment and examination of Plaintiff, thus supporting the assessment.  See Popa v.

15  Berryhill, 872 F.3d 901, 907 (9th Cir. 2017) (an opinion cannot be rejected *merely* for being

16  expressed as answers to a check-the-box questionnaire, especially where the opinion is provided

17  by a treating physician).  Therefore, the ALJ's statement that "it is unclear" upon what medical

18  evidence Dr. Anderson's opinion was based appears to derive from a misreading of the record

19  and does not constitute a specific and legitimate reason supported by substantial evidence for

20  discounting Dr. Anderson's opinion.  Bayliss, 427 F.3d at 1216; Lester, 81 F.3d at 830–31;

21  Andrews, 53 F.3d at 1041.

22      As to the ALJ's second reason for discounting Dr. Anderson's report, the Court finds this

23  also does not constitute a specific and legitimate reason supported by substantial evidence.  The

24  ALJ discounts Dr. Anderson's opinion because it was purportedly inconsistent with Plaintiff's

25  report "that he received adequate relief from his medications, it was not debilitating, and he was

26  able to carry out his activities of daily living."  This finding is problematic because the ALJ

27  appears to give Plaintiff's statements credence to the extent they seem to conflict with Dr.

28  Anderson's assessment on the two (of over 1200) pages of the record she identifies (see AR 24

11

(citing AR 411, 414) (pain management report by Dr. Parmar on Nov. 13 and Dec. 10, 2015)), but she discounts Plaintiff's pain allegations that are consistent with Dr. Anderson's report, which also appear extensively throughout the record (discussed in greater detail below).  See Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding "the ALJ improperly cherry-picked some of [the physician's] characterizations of [the claimant's] rapport and demeanor instead of considering these factors in the context of [the physician's] diagnoses and observations of impairment.").  Notably, even in the same medical visits cited by the ALJ, Plaintiff also complained of increased low back pain and bilateral lower extremity pain, stated that he had very minimal relief from the last LESI, rated the severity of his pain at that time as 6/10, and reported gait disturbance and pain in range of motion.  (AR 409–10.)  During the November visit, Plaintiff could not complete his physical therapy or evaluation due to pain, reported that acupuncture didn't help, and complained of increased low back pain and lower extremity pain.  (AR 412.) The ALJ appears to acknowledge these complaints later in her decision, but apparently discounts them without further explanation.

Furthermore, the ALJ's vague reference to "activities of daily living" fails to meet the specific and legitimate standard.  The Ninth Circuit has held that "[e]ngaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."  Ghanim, 763 F.3d at 1165.  However, in order to reach such a conclusion, the Ninth Circuit requires the ALJ to describe the daily activities, note whether the claimant performs them alone or with assistance, and evaluate whether the nature of each activity "comprise[s] a 'substantial' portion of [the claimant's] day, or [is] 'transferrable' to a work environment."  Id. (recognizing that many home activities may not be easily transferrable to a work environment). Without such description and analysis, it is impossible to ascertain whether Plaintiff's ability to "carry out ADLs" actually contradicts his testimony.  Id.; see also Trevizo v. Berryhill, 871 F.3d 664, 676 (9th Cir. 2017) (finding error where ALJ failed to develop a record regarding the extent to which and the frequency with which claimant engaged in specified ADLs, identify any other tasks that might undermine her claimed limitations, or inquire into whether claimant completed activities alone or with the help of others).  Here, it is unclear what ADLs the ALJ is referring to,

as she does not identify or discuss any in her opinion and does not cite to any specific page in the record that identifies any specific ADLs or otherwise supports her statement.  Thus, the ALJ's finding is not supported by substantial evidence.  Trevizo, 871 F.3d at 676 (absent specific details of ADLs, "those tasks cannot constitute 'substantial evidence' inconsistent with physician's opinion.").   Furthermore, the ALJ's finding is possibly inconsistent with Plaintiff's various statements in the record that he had issues with personal care, doesn't do housework, and doesn't drive.  (AR 87.)

In response, Defendant argues the ALJ's evaluation of the opinion evidence was proper because it is within the ALJ's province to resolve ambiguities in the medical evidence, and because the ALJ's opinion should be upheld even if an alternative interpretation of the medical evidence is identified.  While Defendant's statements are supported in law, they are nonetheless inapposite with respect to this case.  Such holdings may only be applied after a determination that the ALJ's decision was properly supported by substantial evidence.  As noted, the ALJ did not provide specific and legitimate reasons supported by substantial evidence for discounting the functional capacity assessment of Dr. Anderson, a treating physician, in favor of the conclusory opinions of non-treating physicians.  Therefore, the Court is not obligated to affirm her decision and finds remand is warranted.

**B.      Whether the ALJ Properly Discounted Plaintiff's Symptom Allegations**

1.      Legal Standard

The ALJ is responsible for determining credibility,[8] resolving conflicts in medical testimony and resolving ambiguities.  Andrews, 53 F.3d at 1039.  An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; S.S.R. 16-3p at 3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.

---

[8] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities."  S.S.R. 16-3p at 1-2.

1   Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.  If the claimant satisfies the first step

2   and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the

3   severity of those symptoms only by providing specific, clear, and convincing reasons for doing

4   so." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).  "This requires the

5   ALJ to specifically identify the testimony [from a claimant] she or he finds not to be credible and

6   . . . explain what evidence undermines that testimony."  Id. (citations and internal quotations

7   omitted); see also Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015) (ALJ may not

8   simply conclude the claimant is not credible and then summarize the medical evidence supporting

9   her RFC determination; this is insufficient to meet the "specific reasons" standard required to

10  "ensure that the claimant's testimony was not arbitrarily discredited.").   "The clear and

11  convincing standard is the most demanding required in Social Security cases.  It is the same as

12  that required to reject the uncontradicted opinion of a treating physician." Moore v. Comm'r of

13  Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002).

14          Medical evidence is "a relevant factor in determining the severity of a claimant's pain and

15  its disabling effects," but "an ALJ may not reject a claimant's subjective complaints based solely

16  on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch, 400 F.3d

17  at 680–81; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20

18  C.F.R. § 404.1529(c)(2)).  "The rationale for this restriction is that pain testimony may establish

19  greater limitations than can medical evidence alone." Burch, 400 F.3d at 680 (citing SSR 96–7p

20  (1996)).   Thus, the ALJ must examine the record as a whole, including objective medical

21  evidence; the claimant's representations of the intensity, persistence, and limiting effects of his

22  symptoms; statements and other information from medical providers and other third parties; and

23  any other relevant evidence included in the individual's administrative record.  S.S.R. 16-3p at 5.

24  Additional factors an ALJ may consider include the location, duration, and frequency of the pain

25  or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness, or

26  side effects of any medication; other measures or treatment used for relief; conflicts between the

27  claimant's testimony and the claimant's conduct — such as daily activities, work record, or an

28  unexplained failure to pursue or follow treatment — as well as ordinary techniques of credibility

evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid.  See Ghanim, 763 F.3d at 1163; Tommasetti, 533 F.3d at 1039; Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); Smolen, 80 F.3d at 1284.  In reviewing the ALJ's decision, the Court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

2.      Analysis

Here, the ALJ found Plaintiff's medically determinable impairments — degenerative disc disease of the lumbar spine and mild degenerative joint disease of the left shoulder — could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were generally inconsistent with the medical evidence between November 19, 2014, and December 31, 2015.  (AR 21.)  Because the ALJ did not make a finding of malingering "based on affirmative evidence thereof," she was required to make specific findings as to credibility and to state clear and convincing reasons for each finding.  Robbins, 466 F.3d at 883.  The Court does not find the ALJ met this burden.

For example, the ALJ noted Plaintiff's objective imaging scans of Plaintiff's lumbar spine from December 2014 "showed mild findings, or moderate findings at most," of bilateral foraminal stenosis at L2, L3, L3-L4, and L4-L5, which the ALJ opined did not correlate to Plaintiff's allegations of severe pain that would only allow him to walk or stand for 30 minutes at a time before needing to recline.  (AR 21 (citing AR 43–51 (Plaintiff's testimony); AR 914 (pain management progress report noting radiology result)).)  However, as previously noted, an ALJ may not reject a claimant's subjective pain complaints solely on a lack of medical evidence to fully corroborate the alleged severity of pain, but may only consider objective evidence as one factor in her decision.  Burch, 400 F.3d at 680; see also Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) ("Congress recognized the inability of medical science to objectively verify the extent of pain experienced by an individual . . . If Congress adopted a purely objective standard, truly disabled persons would be denied benefits."); Fair v. Bowen, 885 F.2d 597, 601 (9th Cir.

1989) ("[P]ain is a completely subjective phenomenon" and "cannot be objectively verified or measured."). This guidance from the Ninth Circuit appears particularly relevant to the ALJ's finding here, as the record reflects multiple and consistent reports of severe pain. Notably, in the same medical record relied upon by the ALJ discussing Plaintiff's imaging scans, Plaintiff also reported the severity of his pain at that time was 7/10. (AR 914.) Accordingly, the Court does not find Plaintiff's imaging scans, alone, contradict Plaintiff's pain testimony so as to constitute a clear and convincing reason to discount Plaintiff's allegations, but turns to the ALJ's remaining reasons in the record.

The ALJ states Plaintiff's treatment "mostly consisted of pain medication management," which he reported gave him relief and allowed him to carry out (unspecified) ADLs.[9] (citing AR 414.) But this assertion mischaracterizes the record, is belied by the cumulative evidence, and must be rejected. See Ghanim, 763 F.3d at 1164 ("treatment records must be viewed in light of the overall diagnostic record. . ." finding "[w]hen read as a whole, the treatment notes [did] not undermine [claimant's] testimony" but instead revealed continued, frequent suffering of symptoms, "despite some occasional signs of improvement") (internal citations omitted). First, contrary to the ALJ's assertion, the record indicates that, as of May 2015, Plaintiff had "failed conservative approaches" such as medications, physical therapy, and other modalities. (See AR 425.) Second, the Court notes Plaintiff's treatment consisted of much more than mere pain medication management, which also supports the finding that pain medications were an inadequate treatment for Plaintiff. Rather, Plaintiff's attempted treatments included: temporary implantation of a spinal cord stimulator and related "trials," physical therapy, acupuncture, lumbar epidural steroid injections (LESIs), nerve blocks, and a morphine infusion pump. (See AR 415, 417, 421, 425, 530, 905–12.) Notably, Plaintiff was only considered a "good candidate" for a spinal cord stimulator implant in the first case because he was diagnosed with "significant chronic severe intractable low back pain with neuropathic pain going down to bilateral lower extremity." (AR 425.) Indeed, the Ninth Circuit has considered many of Plaintiff's treatments to

---

[9] Again, as previously noted, the failure to specifically identify and discuss Plaintiff's purported ADLs is fatal to any portion of the ALJ's decision derived from Plaintiff's ability to engage in such ADLs. Ghanim, 763 F.3d at 1165; Trevizo, 871 F.3d at 676.

be "aggressive," rather than conservative treatments.   See, e.g., Trevizo, 871 F.3d at 677 (characterizing treatments such as steroid injections, block injections, recommendations for surgery, or even a referral to an orthopedic surgeon as "aggressive" treatment).   Third, the record indicates Plaintiff has complained of *increased* lower back and lower extremity pain, and regardless of treatment, he consistently has rated his pain around the 6-7/10 range.   Finally, even considering only Plaintiff's medication treatment, the Court cannot say such treatment in this case was either "conservative," or that the medications effectively managed Plaintiff's pain.   As previously noted, factors to consider relating to medication treatment may include type, dosage, effectiveness, and side effects.   Lingenfelter, 504 F.3d at 1040.   Here, Plaintiff's pain medication regimen included: Ecotrin Adult Low Strength, 81 mg, 1 delayed release tab per day; Ibuprofen 600 mg; Percocet 325 mg; Gabapentin 800 mg; Morphine Sulfate 15 mg; and Cymbalta.   (See AR 463, 530)   Given the type, high dosage and frequency, the Court is hesitant to conclude Plaintiff's medication treatment should be considered a "conservative" treatment.   Indeed, the ALJ appears to acknowledge the limitations Plaintiff faced sheerly from the side effects of such powerful medications, when she commented in her RFC that "[a]s a precaution, because of his medication usage, he should never work on ladders, ropes, or scaffolds, he should not operate hazardous equipment, including saws and presses, and he should not work at unprotected heights."   (AR 24.) The fact that Plaintiff was taking these medications and still reported pain levels of 6 and 7/10 also cuts against a finding that his medication treatment was effective.   Accordingly, the Court does not find the evidence of Plaintiff's medical treatment constitutes a "clear and convincing reason" for discounting Plaintiff's credibility and pain allegations.

As to the spinal cord stimulator trial, the ALJ characterized this treatment to be successful because Plaintiff reported 50% relief.   (AR 22 (citing AR 400–01, 425).)   The Court does not find this reason to be supported by substantial evidence.   The spinal cord stimulator was ultimately not permanently implanted, but removed, because it did not provide relief in the areas Plaintiff sought relief; namely, his lower back and lower extremity — the areas Plaintiff sought to treat in the first place.   (See AR 415.)   Additionally, the record shows Plaintiff continued to pursue alternative treatments after the spinal cord stimulator, which suggests the spinal cord stimulator was not a

17

1   successful treatment in alleviating Plaintiff's pain.  On this record, the Court does not find

2   Plaintiff's temporary use of a spinal cord stimulator and relief of "50% pain" in areas other than

3   the ones specifically targeted by Plaintiff for relief constitutes a clear and convincing reason to

4   discount Plaintiff's credibility and allegations.

5        The ALJ also states records in January, March, and July 2015 show Plaintiff's gait was

6   consistently noted to be normal, "other than toe and heel walking," and his straight leg raising

7   tests were normal (AR 21 (citing AR 413–25, 905–12).)   However, the record also reveals

8   multiple instances in which Plaintiff complained of pain and gait disturbance, which the ALJ does

9   not seem to address.  (See, e.g., AR 409–10, 530 (Plaintiff reported pain aggravated by walking,

10  especially when stepping on right foot, also by bending).)  As a result, the Court does not find a

11  showing of sometimes normal gait (except for toe walking and heel walking) to be inconsistent

12  with Plaintiff's allegations of pain when he walked for more than thirty minutes at a time.

13       Another reason the ALJ discounted Plaintiff's credibility was that Plaintiff alleged falls in

14  2015, but the ALJ stated the records did not note any falls in May, August, and October 2015.

15  (AR 22 (citing AR 415–25).)   But the ALJ's statement is directly contradicted by the record

16  showing that, on at least one occasion, Plaintiff "fell while he was on Cymbalta, and injured his

17  left shoulder."  (AR 530 (discussing treatment Plaintiff sought for injuries sustained to shoulder

18  after fall).)  Further, the Court finds the lack of medical records documenting *multiple* falls does

19  not contradict Plaintiff's allegation that he fell multiple times, as Plaintiff may not have sought

20  medical attention every single time he fell due to his impairments.  Having found no inherent

21  contradiction between the medical record and Plaintiff's allegations, the Court does not find this

22  reason constitutes a "clear and convincing reason" for discounting Plaintiff's credibility and pain

23  allegations.

24       Finally, the ALJ noted Plaintiff alleged to need assistive devices, such as a wheelchair,

25  walker, shower chair, and cane, but that the medical records for "the relevant period" did not

26  document such devices.   Notably, the ALJ does not indicate Plaintiff's allegations were

27  contradicted by the medical records, only that the ALJ disregarded records and testimony that

28  appears to fall outside the disability period she determined.  Furthermore, the Court has noted

1   Plaintiff disputes the dates of disability identified by the ALJ.  Accordingly, the Court does not

2   find this proffered reason by the ALJ constitutes a "clear and convincing reason" for discounting

3   Plaintiff's credibility and pain allegations.

4          In sum, the Court finds the ALJ's purported reasons to discount Plaintiff's pain allegations

5   are not supported by the record when viewed as a whole, but rather, suggests a cherry-picking and

6   mischaracterization of the record that does not consider Plaintiff's allegations in light of the

7   overall diagnostic record.  See Ghanim, 763 F.3d at 1164.  Moreover, a number of the reasons

8   proffered by the ALJ do not demonstrate a contradiction between the record and Plaintiff's

9   testimony.  On this basis, the Court finds the ALJ did not meet her burden to identify specific

10  findings as to credibility and to state clear and convincing reasons for each finding.  Robbins, 466

11  F.3d at 883.  She therefore erred in discounting Plaintiff's pain testimony and remand is

12  warranted.

13         **C.     Remand**

14         The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g)

15  or to order immediate payment of benefits is within the discretion of the district court.  Harman v.

16  Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an

17  administrative agency determination, the proper course is to remand to the agency for additional

18  investigation or explanation.  Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (citing INS v.

19  Ventura, 537 U.S. 12, 16 (2002)).  Generally, an award of benefits is directed when:

20                 (1) the ALJ has failed to provide legally sufficient reasons for
                   rejecting such evidence, (2) there are no outstanding issues that
21                 must be resolved before a determination of disability can be made,
                   and (3) it is clear from the record that the ALJ would be required to
22                 find the claimant disabled were such evidence credited.

23  Smolen, 80 F.3d at 1292.  In addition, an award of benefits is directed where no useful purpose

24  would be served by further administrative proceedings, or where the record is fully developed.

25  Varney v. Sec'y of Health & Human Serv., 859 F.2d 1396, 1399 (9th Cir. 1988).

26         The Court has determined the ALJ failed to provide clear and convincing reasons for the

27  discounted weight she accorded Dr. Anderson's medical opinion and Plaintiff's pain testimony.

28  The Court has also noted there remain contested issues regarding the period of Plaintiff's

1  disability and how much weight should be accorded to Dr. Anderson's opinion and Plaintiff's

2  testimony, as compared to the non-examining physicians discussed in the ALJ's decision.

3  Determination of these issues could impact other aspects of the ALJ's decision, such as

4  evaluation of the other medical opinions, determination of the severity of all of Plaintiff's

5  impairments and the combination thereof, the determination of Plaintiff's RFC, and consequently

6  the ultimate determination of whether Plaintiff is able to perform work in the national economy.

7  Therefore, the matter should be remanded for the ALJ to re-evaluate the entirety of the medical

8  evidence, fully develop the record regarding Plaintiff's physical impairments, and identify legally

9  sufficient grounds to support her decision.

10                                          **V.**

11                            **ORDER AND RECOMMENDATION**

12          Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court is directed to

13  randomly assign a District Judge to this action.

14          Furthermore, for the reasons explained herein, IT IS HEREBY RECOMMENDED that:

15      1.    Plaintiff's appeal from the decision of the Commissioner of Social Security be

16            GRANTED;

17      2.    This matter be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for

18            further proceedings consistent with this decision; and

19      3.    The Clerk of the Court be DIRECTED to enter judgment in favor of Plaintiff

20            Anthony Thomas Marrufo and against Defendant Commissioner of Social Security

21            and to CLOSE this action.

22          These findings and recommendations are submitted to the District Judge assigned to this

23  action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  **Within fourteen**

24  **(14) days** of service of this recommendation, any party may file written objections to these

25  findings and recommendations with the Court and serve a copy on all parties.  Such a document

26  should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The

27  District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28

28  U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified

time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 3, 2022**
_____
UNITED STATES MAGISTRATE JUDGE